## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **DARRYL MILLS,** | : | **CIVIL ACTION NO. 1:06-CV-0882** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF HARRISBURG, STEPHEN** | : | |
| **BLASKO, ANNEMARIE BAIR** | : | |
| **LEVEL JENKINS, POLICE OFFICER** | : | |
| **JACKSON, and INVESTIGATOR** | : | |
| **EVANS,** | : | |
| | : | |
| **Defendants** | : | |

## MEMORANDUM

This is a civil rights action filed pursuant to 42 U.S.C. § 1983 by plaintiff

Darryl Mills ("Mills") against the City of Harrisburg and members of its police force.

Mills advances numerous civil rights claims associated with his 2004 arrest and

prosecution for patronizing a prostitute. Three defendants have filed a motion for

summary judgment (Doc. 19) on Mills's claims. For the reasons that follow, the

motion will be granted in part and denied in part.

## I.    Statement of Facts[1]

During the early evening of April 30, 2004, Mills and a friend, Phillip Brooks

("Brooks"), visited two bars in Harrisburg, Pennsylvania to play pool. (Doc. 20 ¶ 1;

Doc. 24, Ex. A at 38; Doc. 28-2 ¶ 1.) Mills and Brooks each had several drinks during

---

[1]In accordance with the standard of review for a motion for summary
judgment, the court will present the facts in the light most favorable to the plaintiff,
the nonmoving party. See infra Part II.

the evening.[2]  (Doc. 24, Ex. A at 41; Doc. 24, Ex. B at 38.)  They left the second bar at

approximately 10:00 p.m.  (Doc. 20 ¶ 2; Doc. 24, Ex. A at 38-39; Doc. 28-2 ¶ 2.)

Defendant police officer Annemarie Bair ("Bair") was positioned on a

sidewalk near the bar as an undercover prostitute.  (Doc. 20 ¶ 3; Doc. 24, Ex. C at 8;

Doc. 24, Ex. F; Doc. 28-2 ¶ 3.)  She wore a hidden microphone that transmitted her

conversations to a receiver operated by defendant police Investigator Stephen

Blasko ("Blasko"), positioned in a nearby surveillance vehicle.  (Doc. 24, Ex. G at 9.)

From his position, Blasko could see Bair as she tarried on the sidewalk.  (Doc. 24,

Ex. G at 7, 9.)

Mills and Brooks walked passed Bair when they left the bar.  (Doc. 20 ¶ 10;

Doc. 28-2 ¶ 10.)  They continued down the sidewalk, and Bair called to them when

they were approximately twenty yards beyond her position.  (Doc. 24, Ex. A at 62;

Doc. 24, Ex. B at 50.)  They returned and spoke with her for approximately seven

---

[2]The precise amount of alcohol that Mills and Brooks consumed during the evening is unclear.  Mills testified that he drank "a couple of beers" and had no mixed drinks.  (Doc. 24, Ex. A at 41.)  Brooks, however, recalls both of them having five or six beers and three or four mixed drinks.  (Doc. 24, Ex. B at 38.)

minutes.[3]  Blasko monitored the conversation but could not determine which statements were attributable to Mills and which were uttered by Brooks.  (Doc. 24, Ex. G at 9.)

At the beginning of the conversation, Bair stated that she was attempting to "mak[e] some money," to which Mills responded, "how much you trying to work?" (Doc. 45-2 at 1.)  Soon thereafter, Bair asked how much money Mills and Brooks had, and Mills replied that he had seventeen dollars "to go and get me a drink and a beer after I leave."  (Id. at 3.)  Bair then offered to perform oral sex on Mills for fifteen dollars.  (Id.)  Neither Mills nor Brooks had requested sexual services prior to Bair's offer.  The conversation continued for nearly six minutes after the offer, during which the Mills and Brooks considered whether Bair was a police officer and Mills admired her "nice little fat ass."  (See, e.g., id. at 3, 5-7.)  Brooks informed

---

[3]Both parties have submitted an audio recording of the conversation among Mills, Brooks, and Bair, which commences after the three have begun speaking. (Doc. 24, Ex. D; Doc. 29-6.)  Portions of the conversation are difficult to decipher, the speakers frequently overlap one another, and wind and static drown segments of the discussion.  It is also impossible to determine from the recording alone which male voice is Brooks and which is Mills.  On April 23, 2008, the court instructed defendants to reconstruct the conversation in transcript form.  (See Doc. 44.) Defendants identified the male speakers using testimony from Brooks and from Sherri Mills, Mills's wife, who both distinguished the speakers on the audio tape during their depositions.  (See Doc. 45-2, Ex. A at 78-103; Doc. 24, Ex. B at 18-33.) The transcript appears at Docket Entry No. 45-2.  Plaintiff then responded to defendants' transcript, listing potions that plaintiff contends were inaccurately transcribed.  (See Doc. 47.)  The court construed the transcript and plaintiff's corrigenda as supplements to the parties' Local Rule 56.1 fact statements.  Portions of the transcript that plaintiff has not controverted are deemed accurate.  See L.R. 56.1; (Doc. 44 ¶ 3).  In accordance with the summary judgment standard of review, the court will recount the conversation as amended by plaintiff's response to defendants' transcript.

Bair that he had watched her during the evening from within the bar.  (Id. at 4-8.;

Doc. 20 ¶¶ 11-12; Doc. 28-2 ¶¶ 11-12.)

Brooks then represented that he and Mills were also working as prostitutes

and offered to perform oral sex upon Bair:

| | |
|---|---|
| BROOKS: | Actually[,] we're working, too. |
| BAIR: | Get out of here. |
| MILLS: | Don't we look good? |
| BAIR: | Very good. |
| BROOKS: | Come on.  15 dollars for a headjob[.]  I'm gonna do you.  Man, we're going to pay you.  I'm just saying, you get the thrill and you get paid. |
| BAIR: | Are you serious? |
| BROOKS: | Hell, yeah.  Straight up. |
| BAIR: | *You give me 15 bucks and you'll give me head?* |
| BROOKS: | Yeah. |
| MILLS: | *Yeah.* |
| BAIR: | Okay.  Well, let's go.  Where's your car. |
| MILLS: | Oh, you like him? |
| BROOKS: | You like me? |
| BAIR: | Yeah, why not. |
| [Inaudible.] | |
| MILLS: | *You gonna give me head while he's giving you head.* |

(Doc. 45-2 at 8-9; Doc. 47 at 3 (emphases added)).  The parties negotiated an

exchange wherein Mills and Brooks would pay Bair twenty-five dollars, and Bair

would perform oral sex on Mills while Brooks performed oral sex on Bair.

(Doc. 45-2 at 9-12.)  They reiterated the terms of the transaction as follows:

| | |
|---|---|
| BAIR: | . . . So what's this that you want? |
| MILLS: | He's [Brooks's] going to do you and you're going to do me? |
| BROOKS: | I'm gonna pay you. |
| MILLS: | Right.  *And I'm going to pay you*—while I'm paying you and he's going to pay you.  Okay? |
| BAIR: | So to get a blowjob—I'll tell you what, for a blowjob I'll only charge you 10 bucks. |

4

(Doc. 45-2 at 11; Doc. 47 at 3 (emphasis added)).  Mills identified a location where Bair was to meet him and Brooks after they retrieved their vehicle.  (Doc. 45-2 at 12.)  Blasko and other officers arrived at the scene and arrested Mills and Brooks without prompting from Bair.  (Id. at 12-13; Doc. 20 ¶ 31; Doc. 24, Ex. G at 12; Doc. 28-2 ¶ 31.)

The district attorney filed charges against Mills and Brooks for patronizing a prostitute but dismissed the case after a preliminary hearing.  (Doc. 20 ¶ 38; Doc. 28-2 ¶ 38.)  Blasko testified that he does not know why the district attorney dropped the charges but stated that he is aware of no other occasion on which an undercover prostitution arrest ended with dismissal of criminal charges.  (Doc. 24, Ex. G at 13.)

Mills asserts that he participated in the conversation with Bair in jest, intending only to tease her.  (Doc. 27, Ex. A at 76; Doc. 29-3 ¶ 8.)  He alleges that he had only one dollar in his possession at the time of the conversation and that he therefore lacked the funds necessary to complete the facetiously negotiated exchange.  (Doc. 24, Ex. A at 73; Doc. 29-3 ¶ 8; see also Doc. 24, Ex. B at 101.)  He also claims that Bair entrapped him by offering to engage in sexual activity in exchange for money.

## B.   Bair's Undercover Training

Bair testified that she worked in an undercover capacity on three occasions prior Mills's arrest.  Before each undercover operation, she participated in a training sessions lasting between thirty and sixty minutes.  (Doc. 29 at 28.)  During

these sessions, training officers instructed Bair "[t]o stand at the location [of the undercover operation], to stay in that location, not to get in cars with someone, [and] not to walk away." (<u>Id.</u> at 29.)  The training session also featured role-playing scenarios and discussions of past situations confronted by undercover officers. (<u>Id.</u>)

Bair explained that, in a sting operation, the undercover officer is not responsible for assessing when probable cause exists for arrest, which is the role of the officer remotely monitoring the conversation. (<u>Id.</u> at 30.)  She stated that she had never participated in an undercover operation in which she accidently entrapped a putative defendant, and she has never received instruction about how to handle entrapment if it occurred. (<u>Id.</u> at 38.)  However, if an undercover officer makes a mistake during a transaction, he or she is instructed to end the conversation and tell the suspect to leave the area. (<u>Id.</u>)

C.   **<u>Procedural History</u>**

Mills commenced this action on April 27, 2006, asserting § 1983 claims against Bair, Blasko, and the City of Harrisburg for unlawful arrest and false imprisonment. He likewise propounds a conspiracy claim pursuant to § 1985(3) along with a surfeit of state tort claims.  Defendants move for summary judgment on most claims, asserting that they possessed probable cause to effect Mills's arrest.  Alternatively, Bair and Blasko contend that they are entitled to qualified immunity.  The parties have fully briefed these issues, which are now ripe for disposition.

## II.   <u>Standard of Review</u>

Through summary adjudication the court may dispose of those claims that do not present a "genuine issue as to any material fact," and for which a jury trial would be an empty and unnecessary formality.  <u>See</u> FED. R. CIV. P. 56(c).  It places the burden on the non-moving party to come forth with "affirmative evidence, beyond the allegations of the pleadings," in support of its right to relief.  <u>Pappas v. City of Lebanon</u>, 331 F. Supp. 2d 311, 315 (M.D. Pa. 2004); FED. R. CIV. P. 56(e); <u>see also</u> <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  This evidence must be adequate, as a matter of law, to sustain a judgment in favor of the non-moving party on the claims.  <u>See</u> <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 250-57 (1986); <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587-89 (1986); <u>see also</u> FED. R. CIV. P. 56(c), (e).  Only if this threshold is met may the cause of action proceed.  <u>Pappas</u>, 331 F. Supp. 2d at 315.

## III.   <u>Discussion</u>

Mills advances unlawful arrest and false imprisonment claims under § 1983 against Bair, Blasko, and the City of Harrisburg.  He also alleges that Bair and Blasko participated in a § 1985(3) conspiracy and that all defendants are liable for numerous torts under state law.  The court will address each of his claims *seriatim*.

### A.   <u>Federal Civil Rights Claims</u>

Mills asserts that Bair and Blasko are liable for civil rights violations under § 1983 and § 1985(3).  Both defendants respond that they are entitled to qualified

immunity.  Mills also asserts a municipality liability claim against the City of

Harrisburg based upon its alleged failure to train Bair adequately.

      **1.**      **<u>False Arrest and False Imprisonment Claims under 42 U.S.C.
§ 1983</u>**

Claims of false arrest and false imprisonment under the Fourth Amendment

require the plaintiff to show that he or she was arrested without probable cause.

<u>Groman v. Twp. of Manalapan</u>, 47 F.3d 628, 634-35 (3d Cir. 1995); <u>see also</u> <u>Berg v.

County of Allegheny</u>, 219 F.3d 261, 268-69 (3d Cir. 2000).  Probable cause to arrest

requires "proof of facts and circumstances that would convince a reasonable,

honest" officer that the person arrested has committed a crime.  <u>Lippay v. Christos</u>,

996 F.2d 1490, 1502 (3d Cir. 1993); <u>see</u> <u>United States v. Myers</u>, 308 F.3d 251, 255 (3d

Cir. 2002).  Thus, the issue is not whether an individual actually committed the

crimes for which he or she was arrested, but whether the police had probable cause

to believe that the individual committed those crimes at the time of his or her

arrest.  <u>Groman</u>, 47 F.3d at 634; <u>see also</u> <u>Baker v. McCollan</u>, 443 U.S. 137, 145 (1979)

("The Constitution does not guarantee that only the guilty will be arrested.  If it did,

§ 1983 would provide a cause of action for every defendant acquitted—indeed, for

every suspect released.").

In the matter *sub judice*, defendants assert that the conversation among Bair,

Mills, and Brooks provided probable cause for Mills's arrest.[4]   During this

conversation, Mills asked Bair how much she was "trying to work."  (Doc. 45-2 at

---

[4]Defendants presume that Mills predicates liability upon Bair's alleged
entrapment of him by initiating the conversation and by offering to perform sexual
services before either Mills or Brooks solicited them.  This presumption apparently
derives from entrapment allegations in Mills's complaint and from questions that
Mills's counsel asked Bair about entrapment during her deposition.  (See Doc. 4
¶¶ 22, 54a; Doc. 29 at 38-39.)  Defendants argue that summary judgment is proper
because entrapment is not a cognizable constitutional violation under § 1983.  (Doc.
23 at 11.)  Defendants are correct about the inefficacy of entrapment to support §
1983 liability or to negate probable cause.  See Jones v. Bombeck, 375 F.2d 737, 738
(3d Cir. 1967) ("While entrapment may be a proper defense in a criminal action, a
police officer's participation in such activity does not constitute a constitutional
violation."); United States v. Christie, 570 F. Supp. 2d 657, 672 (D.N.J. 2008)
(concluding that viability of an entrapment defense does not vitiate probable cause
upon which a warrant may be issued); see also Humphrey v. Staszak, 148 F.3d 719,
724 (7th Cir. 1998) ("Entrapment is not part of our Fourth Amendment
probable-cause-to-arrest analysis.").  Mills readily concedes this issue.  (See Doc. 28
at 6 ("The Plaintiff does not assert the entrapment negates probable cause for
purposes of establishing a Section 1983 violation.")).  Although entrapment is not a
central issue in this matter, it is relevant to the probable cause analysis, which
requires the court to view the totality-of-the-circumstances.  See United States v.
Silveus, 542 F.3d 993, 1000 (3d Cir. 2008).  Thus, any purported entrapment by Bair
is material because Bair's initiative in steering the conversation may illumine Mills
and Brooks's intent during the exchange.

1.)[5]  He admired her physical appearance, stating:  "You've got a nice little fat ass."

(Id. at 5.)  He played an integral role negotiating the proposed sexual exchange

among the parties, informing Bair that "You gonna give me head while [Brooks is]

giving you head," (id. at 9), and that "I'm paying you and [Brooks is] going to pay

you," (id. at 11).  He also recommended a location at which Bair could meet him and

Brooks after they had retrieved their vehicle.  (Id. at 12.)  Reasonable, competent

---

[5]Defendants urge the court to disregard Mills's account of the conversation with Bair pursuant to Scott v. Harris, 127 S. Ct. 1769 (2007).  In Scott, the plaintiff alleged that the defendant police officers employed excessive force to apprehend him during a high-speed vehicle chase.  The parties' recounts of the events differed markedly, with the defendant officers recalling that the plaintiff engaged in a ten-mile rampage of reckless driving that endangered the lives of other motorists.  Id. at 1773-74.  Plaintiff averred that he complied with all applicable traffic regulations throughout the chase.  Id. at 1775.  A videotape mounted inside one defendant's patrol vehicle undisputedly corroborated the officers' version of events.  Id.  The Court concluded that the plaintiff's recollection could properly be disregarded because the record evidence irrefutably established its falsity.  Id. at 1776.  Hence, a district court may disregard the factual averments of a summary judgment respondent if they are "blatantly contradicted by the record, so that no reasonable jury could believe [them]."  Id.

The court declines to apply Scott to the instant case.  In Scott, only one reasonable interpretation of the videotape existed:  it clearly depicted the plaintiff operating an automobile in a reckless manner.  Here, in contrast, the audio recording is susceptible to multiple reasonable interpretations.  The parties frequently disagree about the identity of the speaker on the recording, and a jury could conclude either that Mills and Brooks undertook the conversation in jest or that they did so to solicit sex.  The recording's effect on Mills's claims is entirely dependent upon how a jury views it against the context of his arrest.  In light of the multiple reasonable perspectives on the recording, the court cannot disregard Mills's account of events, and defendants may not invoke Scott to receive summary judgment in their favor.

police officers listening to these statements would conclude that probable cause existed to arrest Mills for patronizing a prostitute.[6]

Mills attempts to countermand this finding on the grounds that Blasko could not determine which phrases Mills spoke and which were attributable to Brooks. He contends that Blasko's ignorance of his vocal timbre, coupled with the failure to consult Bair to clarify who had spoken, prevented Blasko from concluding that Mills had committed a crime. Neither of these arguments negates Blasko's probable cause determination. Although Blasko could not assign each line of the dialogue to either Brooks or Mills, both men participated in the conversation equally. The audio recording reveals that both Mills and Brooks spoke with Bair, that both discussed the sexual transaction, and that both informed Bair that they were "going to pay" her for oral sex. (Id. at 11.) Blasko therefore possessed probable cause to believe that both Mills and Brooks were patronizing a prostitute regardless or which man spoke each locution of the conversation.

---

[6]Mills asserts that the conversation reflects his intent to pester Bair rather than to solicit sex. For example, the cacophonous discussion was neither subtle nor secretive. Bair cajoled Mills and Brooks, making the first offer of sexual services, and the parties exchanged bantering witticisms during a conversation lasting in excess of seven minutes. Near the end of the exchange, Brooks represented to Bair that he and Mills were "working" as male prostitutes. (Doc. 45-2 at 8.) In light of these facts, Mills's assertions of teasing are not entirely lacking merit; however, the chastity of his intent is insufficient to refute the overtones of harlotry sounding throughout the conversation. Mills's express representation that he would compensate Bair monetarily for oral sex and his contributions when negotiating the transaction would have enabled all reasonable police officers to conclude that probable cause existed for his arrest. He cannot escape summary judgment based solely upon his claim that the discussion of services to be rendered was innocent repartee.

Moreover, Mills's contention that Blasko should have consulted Bair before arresting him is thoroughly nonsensical. Were Blasko to have communicated with Bair, he inevitably would have alerted putative arrestees to law enforcement presence, undermining the viability of the prostitution sting. Such a conference would render undercover operations difficult, if not impossible, and Mills has identified no precedent requiring it. Regardless of the lack of pre-arrest consultation, the dialogue among Bair, Mills, and Brooks granted Blasko individualized probable cause to arrest both men.[7] The motion for summary

---

[7]In light of the conclusion that individualized probable cause supported Mills's arrest, the court expresses no opinion with regard to defendants' alternative argument that probable cause attached by virtue of a conspiracy between Mills and Brooks for the purpose of patronizing a prostitute. (See Doc. 23 at 9.)

judgment will be granted with respect Mills's false arrest and false imprisonment

claims.[8]   and Mills has identified no precedent requiring such consultation.

### 2.   Conspiracy Claim under 42 U.S.C. § 1985(3)

Mills next advances a claim under § 1985(3), which imposes liability upon

individuals who conspire to "depriv[e], either directly or indirectly, any person or

class of persons of the equal protection of the laws, or of equal privileges and

immunities under the laws." 42 U.S.C. § 1985(3).  To establish a *prima facie* case

under § 1985(3), a plaintiff must prove that:  (1) defendants engaged in a conspiracy,

(2) the conspiracy's purpose was to deprive, either directly or indirectly, any person

or class of persons of equal protection of the laws or equal privileges and

immunities under the laws, (3) defendants committed an act in furtherance of the

---

[8]The court notes that assuming, *arguendo*, Blasko and Bair violated plaintiffs' Fourth Amendment rights, qualified immunity would protect them from suit. Qualified immunity protects a law enforcement officer who has violated a plaintiff's rights if the rights were not "clearly established" when the officer acted.  The officer will be amenable to suit only if "it would have been clear to a reasonable officer that his conduct was unlawful in the situation he confronted." Curley v. Klem, 499 F.3d 199, 207 (3d. Cir. 2007) (quoting Saucier v. Katz, 533 U.S. 194, 202 (2001)).  No liability will attach if a reasonable police officer under the circumstances could have believed that the challenged conduct was lawful.  Springer v. Henry, 435 F.3d 268, 280 (3d Cir. 2006) (quoting Hunter v. Bryant, 502 U.S. 224, 228 (1991) ("[T]he court should ask whether the [official] acted reasonably under settled law in the circumstances." (second alteration in original)).  Here, Bair's conversation with Mills and Brooks featured extensive discussion about the exchange of sexual services for a sum of money.  The parties agreed upon the terms governing the transaction and established a means to implement it, with Brooks and Mills informing Bair that they would return in their vehicle to fetch her.  Were these facts insufficient to establish probable cause, a reasonable, competent police officer would nevertheless believe that they satisfied the probable cause standard. Accordingly, Bair and Blasko are entitled to qualified immunity.

conspiracy, and (4) defendants' actions resulted in injury to the plaintiff's person or property or a deprivation of the plaintiff's rights or privileges as a United States citizen.  <u>Farber v. City of Patterson</u>, 440 F.3d 131, 134 (3d Cir. 2006).  "The language requiring intent to deprive of *equal* protection, or *equal* privileges and immunities, means that there must be some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' action."  <u>Kush v. Rutledge</u>, 460 U.S. 719, 726 (1983) (quoting <u>Griffin v. Breckenridge</u>, 403 U.S. 88, 102 (1971)); <u>Farber</u>, 440 F.3d at 135.  "Mere conclusory allegations of deprivations of constitutional rights are insufficient to state a § 1985(3) claim."  <u>D.R. v. Middle Bucks Area Vocational Tech. Sch.</u>, 972 F.2d 1364, 1377 (3d Cir. 1992).

In support of his § 1985(3) claim, Mills, who is black, alleges that Blasko and Bair demonstrated discriminatory animus by implementing the prostitution sting operation in black neighborhood near a bar frequented by black patrons.  He also argues that Bair provided the conversation's momentum, evidencing an intent "to arrest and convict black men without regard to the existence of probable cause." (Doc. 28 at 9.)

Mills's attempts to support his § 1985(3) claim are completely unavailing.  The record evidence demonstrates merely that Bair and Blasko participated in law enforcement activities near a bar where Mills and Brooks happened to be present.  The record contains not so much as a fleeting inference that Bair and Blasko acted with the invidious intent to deprive passersby of civil rights, that they agreed to perform unlawful arrests, or that they directed their law enforcement efforts

14

against minorities in a discriminatory manner.  In fact, there is nothing to suggest that Mills's race played any role whatsoever, either in Bair and Blasko's law enforcement activity generally or in Mills's particular arrest.  Defendants' motion for summary judgment will be granted with respect to the § 1985(3) claim.[9]

---

[9]Mills purports to assert claims for violation of his First Amendment right of association, his Fourteenth Amendment right to equal protection, and his Fifth Amendment right to travel. (Doc. 28 at 11-12.)  However, Mills's counsel has failed to cite any precedent supporting a right to redress under these doctrines.  In fact, the paucity of counsel's argument, which spans a scant eleven lines of type, is outmatched only by the ineffectuality of these Amendments to provide Mills with any cognizable relief.  The court will dispatch these claims with brevity mirroring counsel's meager attempt to support them.

The First Amendment claim fails because, at the time of Mills's arrest, he was not pursuing any "political, social, economic, educational, religious, [or] cultural ends" that receive protection under the First Amendment right of expressive association.  Roberts v. U.S. Jaycees, 468 U.S. 609, 622 (1984).  The First Amendment right of intimate association is similarly unavailing because Mills's actions do not implicate relationships that "by their nature involve deep attachments and commitments to the necessarily few other individuals with whom one shares . . . distinctively personal aspects of one's life." Id. at 619-20.  The Fourteenth Amendment equal protection claim must be dismissed because Mills has not established discriminatory animus, nor has he identified any individual whom Bair and Blasko treated differently.  Washington v. Davis, 426 U.S. 229, 239-40 (1976); Hill v. Borough of Kutztown, 455 F.3d 225, 239 (3d Cir. 2006).  Finally, Mills has not described which component of the right to travel defendants allegedly restricted.  See Saenz v. Roe, 526 U.S. 489, (1999) (recounting that the right to travel includes the right to cross state borders, the right of a non-resident to mobility within a state equivalent to the mobility that the state provides to its own residents, and the right of a newly arrived resident to the privileges that long-time residents receive).  He apparently argues that defendants deprived him of the right due to his race. (See Doc. 28 at 11-12.)  As such, his claim is properly addressed as an equal protection challenge.  See Rose v. Mahoning Twp., No. 3:07cv1305, 2008 WL 918514, at *5 (M.D. Pa. Mar. 31, 2008) (analyzing alleged deprivation of the right to travel as an equal protection claim because the plaintiff argued that defendants infringed the right on the basis of his race).

### 3.   **Municipal Liability**

Mills alleges that the City of Harrisburg (hereinafter "the city") is liable for alleged constitutional deprivations.[10]  In light of disposition of the Fourth Amendment claims against Bair and Blasko, these claims likewise fail.  See Brown, 318 F.3d at 482; see also Sanford v. Stiles, 456 F.3d 298, 314 (3d Cir. 2006) (stating that municipal liability requires an underlying violation of constitutional rights, either by the municipality's employees or as a result of its policies and customs).  However, assuming *arguendo* that Bair and Blasko violated Mills's rights his claims against the city would fail nonetheless.

Municipalities and other local government entities may not be held liable under § 1983 for the acts of their employees under a theory of *respondeat superior* or vicarious liability.  Bd. of County Comm'rs v. Brown, 520 U.S. 397, 403 (1997); see also Colburn v. Upper Darby Twp., 946 F.2d 1017, 1027 (3d Cir. 1991).  However, a municipality may be held liable if the plaintiff can "identify a municipal 'policy' or 'custom' that caused the plaintiff's injury."  Id. (citing Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978)).  A policy is an official proclamation or edict of a municipality, while a custom is a practice that is "so permanent and well settled as to virtually constitute law." Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996) (quoting Andrews v. City of Phila., 895 F.2d 1469, 1480 (3d Cir. 1990) (citations

---

[10]Plaintiff's claim alleging municipal liability is otherwise known as a Monell claim because the doctrine was established by the Supreme Court's decision in Monell v. Department of Social Services, 436 U.S. 658 (1978).

omitted).  A custom need not be "formally approved by an appropriate

decisionmaker," but must be "so widespread as to have the force of law."  Natale v.

Camden County Corr. Facility, 318 F.3d 575, 584 (3d Cir. 2003) (quoting Brown, 520

U.S. at 404).

A municipality may be held liable for constitutional violations that result

from inadequate training or supervision of its employees if the failure to train

constitutes a custom of the municipality.  The failure must "amount[] to deliberate

indifference to the constitutional rights of persons with whom the police come in

contact."  Colburn, 946 F.2d at 1028 (citing City of Canton v. Harris, 489 U.S. 378,

388 (1989)).

Deliberate indifference is a difficult standard for a plaintiff to satisfy in the

failure-to-train context.  Reitz v. County of Bucks, 125 F.3d 139, 145 (3d Cir. 1997).

It requires that "(1) municipal policymakers know that employees will confront a

particular situation; (2) the situation involves a difficult choice or a history of

employees mishandling; and (3) the wrong choice by an employee will frequently

cause deprivation of constitutional rights."  Carter v. City of Phila., 181 F.3d 339, 357

(3d Cir. 1999).  The plaintiff must demonstrate that a "policymaker ignored a known

or obvious risk," Grillone v. City of Phila., No. 02-CV-6916, 2003 WL 21293801, at *4

(E.D. Pa. Mar. 10, 2008) (citing Brown, 520 U.S. at 409), and that the municipality's

"*deliberate* conduct . . . was the 'moving force' behind the injury alleged."  Reitz, 125

F.3d at 145 (quoting Brown, 520 U.S. at 404).  "A need for training or other

corrective action to avoid imminent deprivations of a constitutional right must be so

17

apparent that any reasonable policymaker or supervisor would have taken appropriate preventive measures." <u>Strauss v. Walsh</u>, No. Civ.A. 01-3625, 2002 WL 32341791, at *3 (E.D. Pa. Dec. 17, 2002); <u>Garcia v. County of Bucks</u>, 155 F. Supp. 2d 259, 268 (E.D. Pa. 2001). Recovery also requires that the failure to train be "closely related to the ultimate [constitutional] injury." <u>Woloszyn v. County of Lawrence</u>, 396 F.3d 314, 325 (3d Cir. 2005).

Mills alleges that Bair's training reflects deliberate indifference by the City of Harrisburg to his Fourth Amendment right to be free from arrest without probable cause during the undercover prostitution operation.[11] However, Mills has not proffered any evidence that municipal policymakers were aware of this risk. He has not submitted deposition testimony from any policymaker that recounts police department procedures for undercover operations, demonstrates the city's knowledge thereof, or indicates who ordered Bair and Blasko to perform the undercover operation that resulted in his arrest. In fact, Bair testified that she did not know who had made the "ultimate decision" with respect to her orders that evening. (Doc. 29 at 26.) Mills' evidence does not identify which police policymakers received information alerting them to possible Fourth Amendment violations or what measures those policymakers took in response. Without

---

[11]Liability is not predicated upon Bair's alleged entrapment of Mills. <u>See</u> <u>supra</u> note 5. Rather, Mills alleges that the city's failure to train Bair adequately resulted in his arrest without probable cause. <u>Id.</u>

evidence of policymaker knowledge, Mills cannot demonstrate that the City of Harrisburg "ignored a known or obvious risk." <u>Grillone</u>, 2003 WL 21293801, at *4.

Moreover, it is undisputed that the city took affirmative steps to train undercover officers.  Bair participated in a training session before each of her undercover operations.  During these sessions, participants received instructions about safety, participated in role-playing exercises, and were educated about situations encountered by previous undercover officers.  As a result of these sessions, Bair learned that her primary goal when working undercover was "to keep myself safe."  (Doc. 29 at 30.)  Engaging individuals seeking to patronize a prostitute was a secondary goal.  When working undercover, Bair was not responsible for an assessment of probable cause, a determination handled by the officer monitoring her conversations.  If problems developed, she was instructed to "just to tell the person to get out of the area."  (<u>Id.</u> at 38.)  She further stated that she has never confronted a situation in which she mistakenly entrapped a suspect whom her fellow officers arrested as a result.  (<u>Id.</u>)  The record does not reflect whether she received training specific to such a scenario.

Bair's testimony provides the lone evidence upon which Mills predicates his failure to train allegations.  (<u>See</u> Doc. 28 at 6-8.)  Her lengthy training sessions reflect an attempt by the City of Harrisburg to train its officers in a manner commensurate with the duties that they perform.  The training Bair received does not reflect an egregious failure to act that is the defining characteristic of deliberate

indifference.  Accordingly, summary judgment constitutes an appropriate

disposition for Mills's claims against the city.

## B.    State Law Claims

Mills advances numerous state law tort claims associated with his arrest.

These claims include assault, battery, and intentional infliction of emotional

distress.[12]

### 1.    Assault and Battery

The tort of assault requires that the defendant act with the intent to place the

plaintiff in apprehension of imminent harmful or offensive bodily contact and that

the plaintiff actually experience such apprehension.  See Heverly v. Simcox, No.

4:05-1370, 2006 WL 2927262, at *9 (M.D. Pa. Oct. 11, 2006); D'Errico v. DeFazio, 763

A.2d 424, 431 n.2 (Pa. Super Ct. 2000).  Battery requires proof that the defendant

acted with the intent to cause harmful or offensive bodily contact with the person of

the plaintiff and that such contact actually followed.  See Fulks ex rel. Daniel v.

Gasper, 439 F. Supp. 2d 371, 379 (M.D. Pa. 2006); Montgomery v. Bazaz-Shegal, 742

---

[12]In addition, Mills advances state tort claims for false arrest, false
imprisonment, and malicious prosecution.  The validity of each of these claims
depends upon whether defendants possessed probable cause to arrest him.  See
Renk v. City of Pittsburgh, 641 A.2d 289, 295 (Pa. 1994) ("In the context of an arrest,
an actor is liable for false imprisonment when he causes the false arrest of another
person.  A false arrest is defined as 1) an arrest made without probable cause or 2)
an arrest made by a person without privilege to do so."); Corrigan v. Cent. Tax
Bureau of Pa., 828 A.2d 502, 505 (Pa. Commw. Ct. 2003) (observing that the lack of
probable cause is an essential element of a malicious prosecution claim).  In light of
the court's holding with respect to probable cause, summary judgment must be
granted on these claims.  See supra Part III.A.1.

A.2d 1125, 1130 (Pa. Super. Ct. 1999).  Police officers are privileged to commit these torts during a lawful arrest supported by probable cause.  See Groman, 47 F.3d at 634 ("Police officers are privileged to commit a battery pursuant to a lawful arrest . . . ."); RESTATEMENT (SECOND) OF TORTS §§ 118, 121 (1965).

In the instant matter, defendants applied force to Mills to effectuate his arrest, thereby satisfying the bodily contact element of battery and the apprehension thereof necessary to a claim of assault.  However, probable cause existed for his arrest, conferring defendants with a privilege to inflict these torts. See supra Part III.A.1.  Mills does not advance any other defect in his arrest rendering it unlawful.  Accordingly, summary judgment will be granted in favor of defendants with respect to these claims.

### 2.    Intentional Infliction of Emotional Distress

In order to sustain a claim for intentional infliction of emotional distress ("IIED"), the plaintiff must establish that:  (1) the defendant's conduct was intentional or reckless, (2) the defendant's conduct was extreme and outrageous, (3) the defendant's conduct caused emotional distress, and (4) the resultant emotional distress was severe.[13]  Brufett v. Warner Commc'ns, Inc., 692 F.2d 910,

---

[13]The Pennsylvania Supreme Court has yet to formally recognize a cause of action for IIED.  Taylor v. Albert Einstein Med. Ctr., 754 A.2d 650, 652 (Pa. 2000). However, the court has indicated that if it were to recognize such a cause of action, a plaintiff would, at minimum, need to allege the elements set forth above to prevail. Id.

914 (3d Cir. 1982).  For an IIED claim to survive, the court[14] must be satisfied that

the defendant's alleged misconduct is so extreme and outrageous that it "go[es]

beyond all possible bounds of decency, and . . . [is] regarded as atrocious, and

utterly intolerable in a civilized society."  Wilkes v. State Farm Ins. Cos., No. 1:05-

CV-586, 2005 WL 1667396, at *4 (M.D. Pa. July 15, 2005).  Conduct that Pennsylvania

courts have deemed sufficiently outrageous to constitute IIED includes:  (1) killing

the plaintiff's son with an automobile and then burying the body, rather than

reporting the incident to the police; (2) intentionally fabricating documents that led

to the plaintiff's arrest for murder; and (3) knowingly releasing to the press false

medical records diagnosing the plaintiff with a fatal disease.  Hoy v. Angelone, 720

A.2d 745, 754 (Pa. 1998).

In this case, Mills predicates his IIED claim upon his conversation with Bair

and the arrest that followed.  This conduct and is far afield from the flagitious

behavior upon which courts have permitted IIED actions to proceed.  Therefore,

defendants' conduct is not sufficiently outrageous to support an IIED claim, and the

court will grant the motion for summary judgment.[15]

---

[14]In Pennsylvania, the element of outrageousness has long been regarded as an issue of fact initially reserved for the court.  Swisher v. Pitz, 868 A.2d 1228, 1231 (Pa. Super. Ct. 2005).

[15]Defendants move for summary judgment on Mills's claims for abuse of process and negligent infliction of emotional distress ("NIED").  (Doc. 23 at 27-28, 31-32.)  Mills's counsel has failed to respond to arguments that defendants raised against these claims.  As such, Mills has abandoned them, and summary judgment will be granted in defendants' favor.  See Smith v. Lucas, No. 4:05-CV-1747, 2007 WL 1575231, at *10 (M.D. Pa. May 31, 2007) (holding that the plaintiff abandoned

IV.    **Conclusion**

Reasonable jurors viewing the evidence in the light most favorable to Mills

would conclude that Blasko possessed probable cause to arrest him.  Defendants'

motion for summary judgment will therefore be granted with respect to all claims

that require a probable cause analysis.  Summary judgment will likewise be granted

on the claims under for municipal liability and under § 1985(3); the First, Fifth, and

Fourteenth Amendments; and state law.

An appropriate order follows.

     S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge

Dated:        December 2, 2008

_____

claims by failing to oppose them in response to a motion for summary judgment);
Clarity Software, LLC v. Allianz Life Ins. Co. of N. Am., No. 2:04-cv-1441, 2006 WL
2346292, at *5 (W.D. Pa. Aug. 11, 2006) (same); Cacciatore v. County of Bergen, No.
Civ.A. 02-1404, 2005 WL 3588489, at *1 n.1 (D.N.J. Dec. 30, 2005) (same).
Notwithstanding abandonment, summary judgment is appropriately granted on the
abuse of process claim because Mills has failed to adduce evidence that defendants
employed legal process for a purpose other than to prosecute him for patronizing a
prostitute.  See supra Part III.A.2; see also Lerner v. Lerner, 954 A.2d 1229, 1238
(Pa. Super. Ct. 2008) (stating that an abuse of process claim requires proof that the
defendant instituted legal process against the plaintiff "primarily to accomplish a
purpose for which the process was not designed").  Likewise, he has not proffered
evidence either that he sustained physical injury during arrest or that defendants
behaved in a negligent manner; hence, granting summary judgment is a proper
disposition for his NIED claim.  See Armstrong v. Paoli Mem'l Hosp., 633 A.2d 605,
609 (Pa. Super. Ct. 1993).

**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **DARRYL MILLS,** | : | **CIVIL ACTION NO. 1:06-CV-0882** |
| | : | |
| **Plaintiff** | : | **(Judge Conner)** |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF HARRISBURG, STEPHEN** | : | |
| **BLASKO, ANNEMARIE BAIR** | : | |
| **LEVEL JENKINS, POLICE OFFICER** | : | |
| **JACKSON, and INVESTIGATOR** | : | |
| **EVANS,** | : | |
| | : | |
| **Defendants** | : | |

## <u>ORDER</u>

AND NOW, this 2nd day of December, 2008, upon consideration of

defendants' motion for summary judgment (Doc. 19), and for the reasons set forth

in the accompanying memorandum, it is hereby ORDERED that:

1.  The motion for summary judgment (Doc. 19) filed by defendants City
    of Harrisburg, Stephen Blasko, and Annemarie Bair is GRANTED.

2.  The Clerk of Court is instructed to defer entry of judgment until the
    conclusion of this matter.


   S/ Christopher C. Conner
CHRISTOPHER C. CONNER
United States District Judge